This is a compensation suit in which the plaintiff seeks to recover from the defendant, compensation at the rate of $18.20 per week for 400 weeks on account of total disability arising out of a hernia which he claims to have sustained by accident while at work on January 12, 1944. In addition he asks that he be allowed to recover $250 for medical expenses.
He sets out that on the day he claims to have been injured he was in the employ of the defendant Delta Tank Manufacturing Company which was engaged in building large steel tanks. That his work was that of a laborer and while acting in the scope of his employment and engaged in assisting other employees in carrying heavy sheets of steel he suffered an inguinal hernia on his right side. He sets out further that his average weekly earnings at the time of his injury were $28, 65% of which amounts to the rate of compensation he is praying for. He alleges also that he has been compelled to employ doctors to examine and treat him and that he will have to buy a surgical belt or truss, the value of all of which will be the sum of $250.
The defendant for answer admitted the employment of the plaintiff on the date on which he alleges he was injured, admits the nature of its business and that it was hazardous, and also admits that plaintiff's average weekly earnings amounted to $28; but otherwise it denies each and every other allegation of plaintiff's petition and consequently prays for a dismissal of his suit.
[1] Upon reading the testimony it becomes readily apparent that the defendant also admits that plaintiff is, and has been, suffering with a hernia on his right side but strenuously contends that he did not sustain the hernia at the time and in the manner as alleged by him in his petition. Upon trial of the case the district judge was positively convinced that plaintiff had failed to support the allegations of his petition by competent evidence and he therefore rendered judgment against him. On reading the written opinion handed down by him it would seem as though the trial judge did not believe plaintiff's testimony at all. He commented on the testimony of a witness named Victor Alexander who testified for the defendant and from which the only inference to be drawn is that this plaintiff has tried to trump up this hernia case against the defendant. If it were a matter of choice between his testimony and that of the witness Alexander, we would be inclined to agree with the trial judge but we don't think that a judgment in the case need rest entirely upon the testimony of either of these two witnesses as we are of the opinion that otherwise plaintiff has failed to prove his case to a legal certainty as he was obliged to do.
Plaintiff claims that on the morning on which he was injured he was called from his regular employment in the welding shop to assist in moving some heavy sheets of steel to the shearing machine where they had to be cut. According to him it took nine or ten men to carry one of these sheets. They moved one without any trouble, but when they put the second one down he says he felt a pain, and in testifying he referred to it by indicating the place on his right side about even with the hip bone. He says that another negro by the name of Edward Knight was handling the sheet near him and he told him at the time "I believe I hurt myself." Although he says that there were nine or ten men handling the sheet, he only remembers Knight and Victor Alexander by name. He speaks of another called Charlie but apparently did not know his family name.
He continues his testimony by saying that he went to the bathroom and sat down for a while; that it pained pretty badly but soon passed away. That he spoke to Mr. Keegler (whose real name is Cagle), meaning no doubt that he gave him the information as one of the foremen on the job, but Mr. Cagle was busy and told him that he would "hear him" when he came back. The real boss on the job, Mr. Shelton, he says was not there that day. *Page 95 
After he returned from the bathroom he went back to work in the welding shop, worked throughout that day, went back to the job the following day until twelve o'clock then went home and stayed in bed that evening. He remained in bed Friday morning and Friday afternoon went the plant and got his money but did not tell anyone anything about having been hurt. In recalling the first night of the day on which he was injured he says "it pained me right briefly and a knot came out." Notwithstanding this, as already stated, he went back to work the next day and it was not until the following morning that he went to see a doctor of his own choosing, Dr. H.W.A. Lee. He says that Dr. Lee told him he would have to be operated on so the following day he went back to the plant and saw Mr. Long and told him what had happened and what the doctor had told him, to which Mr. Long replied that he had been standing up in the blacksmith shop so long he thought he would put him on the yard, meaning, no doubt, that he would give him lighter duties to perform. He only worked an hour that day and before leaving spoke to a lady, whom he refers to as the secretary, who gave him a note to go back to the doctor, which he did, but Dr. Lee again told him that there was nothing to do for him except to perform an operation. Since then he has never gone back to work and has only performed light jobs such as working in yards, planting garden seeds, etc., for which he was not paid anything.
Plaintiff's testimony is the only one to be found in the record about his injury except for that of Edward Knight, his fellow employee on the job with him, who corroborates his story to the effect that they were both working in the welding shop when somebody came and called them to help in moving these iron sheets to the shears and that after putting the iron sheets down plaintiff said that he believed he had hurt himself. He says it was either Mr. Cagle or Mr. Cox who called them away from their regular work and he also says that Mr. Shelton was not there that day. He says that after plaintiff complained of being hurt he worked the rest of that day and believes that he came back to work the next day. This witness refers to the number of men helping them in moving the sheet of steel but he also does not seem to remember any except the plaintiff, the negro Alexander and himself. He was interviewed by one of the attorneys for the defendant who wrote down his statement and after it was read to him he signed it. In this statement he told the attorney that he and the plaintiff and another colored man were working together, that the three of them picked up a sheet of steel and plaintiff said "I believe I have wrenched my back" and caught himself in the right side with his hand. He was cross-examined with regard to the difference which appears in his statement and what had happened the way he related it on the witness stand, and as far as we can see he has not given any satisfactory explanation for the two different versions. The important difference is with regard to the number of men who were handling this piece of steel for if there were more than three it is a bit strange that no one but he would have heard plaintiff complain about having been hurt, especially as it turns out that the other one of the three, Victor Alexander, says he did not hear plaintiff make any such complaint and if he had told Edward Knight about it he would have heard him because they were right close together.
[2] The foregoing constitutes all the testimony produced by the plaintiff to prove that he has sustained a hernia in the manner as set out by him in his petition and the rest of the evidence is practically all taken up with the expert testimony of the doctors on the question as to whether the hernia is one which may have antedated the alleged date of the accident in relation to the time when these doctors examined the plaintiff.
On this point we deem it unnecessary to say more than that whilst these doctors all seem to agree that it is difficult to say exactly how long it may have existed, the preponderance of the testimony is that the hernia was of more ancient origin than plaintiff claims it to be.
Aside from this is the fact that there is no proof on the part of the plaintiff that he reported the accident to anyone at the plant who might have been over him at the time. He and Knight both testified that Mr. Shelton, who apparently was the foreman to whom complaint should have been made, was not at the plant that day, whereas the proof is otherwise positive that he was there the whole day.
[3] The testimony of the witness Alexander, if it is to be believed, is of itself *Page 96 
sufficient to defeat the plaintiff's claim, for in spite of a rather severe cross-examination he stood up to the story he told on direct examination that two weeks before the day on which plaintiff claims to have been hurt he met him on the road and asked him then if he would be a witness for him in a case against the defendant for having ruptured himself while on the job. As we have said the trial judge believed him and we have no reason to say that he was wrong in his appreciation of the weight to be given to that testimony.
The point is made that plaintiff was working regularly before and that after this alleged accident in which he says he sustained the hernia, it developed that he did have one and he could not do hard labor any more. It is urged also that not so long before he had worked in industrial employment where medical examinations were required and that he was passed and accepted for hard labor. His word is the only proof on that point as no witness was produced from the source nor was any medical report offered in the record. As against this is the plaintiff's admission that he was classified 4-F on his examination in the draft and when pressed on cross-examination to say why, and asked directly if it was not because he had a hernia, his counsel pleaded professional privilege and was sustained by the court.
We think that the case was properly disposed of in the lower court and for the reasons herein stated it is ordered that the judgment appealed from be affirmed.